IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CIVIL ACTION NO. 5:21-CV-00163-M

| | |
|---|---|
| DIANE MILLER, | ) |
| Plaintiff, | ) |
| v. | ) **FIRST AMENDED COMPLAINT** |
| NASH COUNTY, and, KIMBERLY S. NICHOLSON, in her individual and official capacity, | ) |
| Defendants. | ) |

COMES NOW the Plaintiff, by and through the undersigned counsel, complaining of the Defendants, and alleges and avers as follows:

## NATURE OF THE CASE

This action is brought pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et. seq.*, as amended ("Title VII"); Age Discrimination in Employment Act, 29 U.S.C. §621 *et.seq.*; and the common law of the State of North Carolina. The jurisdiction of this Court is invoked to redress the deprivation of rights guaranteed by federal and state law. These rights provide for damages for illegal retaliation and discrimination in the employment of Plaintiff Miller and denial of promotion. These rights further provide for damages arising from the willful and malicious conduct that caused Plaintiff Miller a loss of employment opportunities. Plaintiff Miller seeks damages, including, but not limited to, lost pay, loss of past, present, and future benefits, compensatory damages, punitive damages, and pain and suffering as a result of

the intentional and unlawful actions of Defendants as more fully described below.

## PARTIES AND JURISDICTION

1. The Plaintiff, Diane Miller ("Plaintiff"), is a citizen and resident of Northampton County, North Carolina.

2. Defendant Nash County, is a body politic and corporate as defined by N.C. Gen. Stat. § 153 *et seq.* and is capable of being sued.

3. Upon information and belief, Nash County Department of Social Services ("NCDSS") has consented to being sued in this action by either purchasing liability insurance and/or participating in a sufficient amount to effectuate a waiver of its governmental immunity.

4. Upon information and belief, Defendant Kimberly ("Kim") S. Nicholson, is a citizen and resident of Nash County, North Carolina.

5. This court has jurisdiction over the subject matter of this action under the common law of North Carolina and pursuant to the judicial power vested in the General Court of Justice by N.C. Gen. Stat. §§ 7A-3, 7A-240 and 7A-243.

6. Venue is proper pursuant to N.C. Gen. Stat. § 1-77, as Nash County is the county where the actions complained of occurred.

## FACTUAL ALLEGATIONS

7. All allegations contained in Paragraphs 1-6 above are re-alleged and incorporated herein by reference.

*Establishment of Employment*

8. Plaintiff is a Caucasian woman over the age of forty years old.

9. In September 2015, Plaintiff began her career advocating for vulnerable children and commenced work for Nash County. Plaintiff started as an intern while completing her

Masters of Social Work ("MSW") at East Carolina University. At all times during her internship, Plaintiff showed exceptional promise, willingness to learn, and the capacity to have a successful career as a social worker.

10. During Plaintiff's internship, Shea Neal was Plaintiff's direct supervisor and Director Amy Pridgen-Hamlett was Plaintiff's internship supervisor.

11. On December 21, 2015, Plaintiff was hired by Nash County to serve as an Investigations, Assessments, and Treatment Social Worker ("CPS IA/T") within the Child Protective Services Division. Plaintiff's first day of work was January 4, 2016.

12. When Plaintiff was hired, Amanda Jankowski became Plaintiff's direct supervisor while Director Amy Pridgen-Hamlett remained her internship supervisor.

13. In February 2017, Plaintiff applied for and received a lateral transfer to an on-call position where Ms. Neal became Plaintiff's direct supervisor again.

14. In July 2017, Ms. Neal was promoted but continued to serve as Plaintiff's supervisor until September 2017 when Kim Nicholson was hired and became Plaintiff's direct supervisor.

15. Upon information and belief, Ms. Nicholson is an African-American woman who is over the age of forty years old.

16. From January 2016 to January 2018, Plaintiff performed her job successfully and showed consistent improvement. Plaintiff received no disciplinary action during this time.

17. Beginning in 2018, despite Plaintiff's successful job performance, Plaintiff began to experience harassment from Kim Nicholson, Plaintiff's direct supervisor.

18. Specifically, Ms. Nicholson did not treat Plaintiff the same as other employees in the department. Ms. Nicholson required Plaintiff to cover on call for other workers, cover

the intake desk, and assist other workers with their assigned tasks. Plaintiff was unfairly scrutinized for the overtime that was required to complete the aforementioned tasks.

19. Additionally, Ms. Nicholson often requested Plaintiff to work on call while attending scheduled trainings. This practice was not requested of other employees of NCDSS.

20. On or about February 1, 2018, Plaintiff reported her concerns about Ms. Nicholson's discriminatory behavior to Shea Neal, the Deputy Director of Nash County Department of Social Services. Upon information and belief, Ms. Neal did not act on this report.

*Interview and Denial of Promotion*

21. On or about March 25, 2018, wishing to further her career to better serve the vulnerable children of Nash County, Plaintiff applied for the position of Social Work Supervisor III (the "Supervisor Position"). Plaintiff was granted an interview and scored a perfect 25 out of 25 points in the interview assessment.

22. Plaintiff was interviewed by a team of supervisors including Ms. Nicholson, Ms. Jankowski, and Ms. Neal.

23. Meanwhile, on or about April 25, 2018, Plaintiff met with Ms. Neal to file a written complaint about Ms. Nicholson's continued discriminatory behavior. Upon information and belief, Ms. Neal again failed to act on the report.

24. Despite her educational background, successful work experience, and exceptional performance in the interview, Plaintiff was not offered the Supervisor Position. Instead, the Supervisor Position was reposted and a second round of interviews was completed.

25. Plaintiff was not considered for the Supervisor Position during the second round of interviews. The position was ultimately awarded to an African-American applicant under the age of 40. Upon information and belief, the applicant selected for this Supervisor Position was less qualified than Plaintiff.

26. Plaintiff was notified of this decision in May 2018. Shortly after the selection, Plaintiff was awarded the opportunity to meet with the management team to discuss her interview and the selection.

27. During this meeting, the management team informed Plaintiff that another supervisor position would be opening soon and encouraged her to apply. The management team informed Plaintiff that she was a strong candidate for the position.

*Transfer to Another Team*

28. Believing that she would continue to experience discrimination and harassment working under Ms. Nicholson, Plaintiff decided to transfer to a different working team in the department.

29. On or about June 9, 2018, Plaintiff applied for, was granted an interview, and was given a lateral move onto Ms. Caison's team. Ms. Caison became Plaintiff's direct supervisor while Ms. Nicholson remained the Program Director and direct supervisor for all "on-call" duties.

30. Upon information and belief, while on Ms. Caison's team, Plaintiff did not receive any disciplinary action or reprimand, was tasked with assisting in the training of new employees, was asked to assist other employees on her team, and was given specific and challenging cases due to her experience and investigative skills.

31. Plaintiff's stellar work product is evidenced by her annual February 2019 performance review. In this performance review, Plaintiff scored 1.8 out of 2.0 and was assessed as "exceeds standards" in teamwork, public and customer relations, time management, and application of professional knowledge and skills.

32. The February 2019 annual performance review was conducted by Ms. Caison and signed by Director Pridgen-Hamlett, Ms. Neal, and Ms. Nicholson.

33. During the time Plaintiff worked under Ms. Caison, she still experienced increased scrutiny of her work and time management by Ms. Nicholson.

34. For example, Plaintiff was instructed by Ms. Nicholson to interview, for a third time, two children who had disclosed sexual, emotional, and physical abuse to their therapist.

35. Upon information and belief, this action went against CPS protocol and best practices as repeated interviews can cause a child to be revictimized. Plaintiff expressed concerns about performing this task and other tasks that violated CPS protocol and best practices.

*Denial of an Interview and Resignation*

36. On or about May 10, 2019, Plaintiff again applied for a Supervisor Position opening.

37. This time, Plaintiff was not even granted an interview despite previously being assessed as more than qualified for the Supervisor Position and scoring a 25/25 on her previous interview score sheet. Additionally, the management team had encouraged her to apply for the Supervisor Position.

38. The Supervisor Position was again awarded to an African American applicant under the age of 40. Upon information and belief, the applicant awarded the Supervisor Position was less qualified than Plaintiff.

39. Upon information and belief, the applicant awarded the position had not completed first year training requirements, was not trained in sex abuse, forensic interviewing, application of professional knowledge and skill, and had failed one of her internships.

40. On or about June 24, 2019, Plaintiff resigned from her job due to continued harassment, bullying, and discrimination she experienced at the hands of Ms. Nicholson. Nash County's denial of an interview for the Supervisor Position was a mere example of the aforementioned discrimination.

41. To leave on good standing, Plaintiff gave notice that her last day would be July 19, 2019. This time would allow Plaintiff to complete all of her work on her current cases, recently closed cases, and eliminate backlog.

42. Plaintiff's resignation was subsequently accepted and granted in good standing by Director Amy Pridgen-Hamlett.

43. On or about June 27, 2019, Plaintiff spoke to Ms. Neal regarding her decision to resign from the agency. Plaintiff informed Ms. Neal that she chose to resign because she experienced harassment, discrimination, and bullying at the hands of Ms. Nicholson. Plaintiff informed Ms. Neal that Plaintiff felt she was being pushed out of the agency.

44. Upon information and belief, Ms. Neal claimed that Plaintiff "did not deserve an interview" because Plaintiff had poor time management skills, boundary issues, and was unable to get along with community partners. These statements were inaccurate and a direct contradiction to Plaintiff's 2019 annual evaluation where Plaintiff was assessed as "exceeds standards" in these areas.

45. Upon information and belief, later that same day, Plaintiff went to Nash County's Personnel Office and spoke with Anison Kirkland, the Personnel Director. Plaintiff addressed her concerns with Mr. Kirkland and informed him of the harassment, discrimination, and bullying Plaintiff had experienced by Ms. Nicholson. Again, no action was taken to address Plaintiff's concerns about discriminatory treatment.

46. On or about July 1, 2019, Plaintiff was asked to speak with Director Pridgen-Hamlett in her office. Upon information and belief, Ms. Pridgen-Hamlett informed Plaintiff that this would be her last day at the agency. Upon information and belief, Plaintiff was instructed to turn in

her phone, badge, and computer to the Personnel Director. Plaintiff was then escorted from the building.

47. The above treatment was highly unusual for the department. Upon information and belief, no employee that was granted a resignation in "good standing" had been escorted from the premises in the manner Plaintiff was. The treatment is yet another example of the discriminatory treatment Plaintiff experienced at Nash County.

*Rescinded Job Offer*

48. Shortly after leaving Nash County, Plaintiff began searching and interviewing for jobs.

49. In early August 2019, Plaintiff applied to work as a Social Service Specialist II with the Fairfax County Department of Family Services in Virginia.

50. After conducting an interview, Fairfax County communicated with Ms. Caison and received a positive verbal reference. Upon information and belief, they also received two other favorable references from other co-workers of Plaintiff.

51. On or about August 14, 2019, Plaintiff was offered the job opportunity with Fairfax County. Plaintiff's employment offer was contingent on a satisfactory verification of her credentials, criminal background, driving record, and Child Protective Services registry checks.

52. Plaintiff attended on-boarding orientation, was fingerprinted, and completed all elements required prior to employment. Plaintiff was scheduled to start work on September 3, 2019.

53. On or about August 23, 2019, Ms. Nicholson contacted the Fairfax County Department of Family Services. Ms. Nicholson gave a reference that was deemed to be unsatisfactory.

54. Plaintiff nor Fairfax County requested a reference from Ms. Nicholson. Upon information and belief, Ms. Nicholson heard about Plaintiff's job offer from co-workers and reached out to the Fairfax County Department of Family Services to provide an

8

Case 5:21-cv-00163-M    Document 21    Filed 06/07/21    Page 8 of 15

unsolicited and false negative reference.

55. On or about August 26, 2019, Plaintiff's was notified that her employment offer was rescinded due to the unsatisfactory reference provided by Ms. Nicholson. Plaintiff was unable to secure other employment for more than one (1) year due to the false negative reference provided by Ms. Nicholson.

56. Upon information and belief, the negative reference was shared with other state and county agencies in Virginia, preventing Plaintiff from obtaining any social service position within the state.

57. Ms. Nicholson's actions were undertaken as a representative of Nash County and were done with the specific intent to interfere with Plaintiff's job prospects.

58. Nash County is liable for the actions of Ms. Nicholson pursuant to the doctrines of respondeat superior and vicarious liability.

59. Plaintiff timely filed a Charge of Discrimination with the EEOC alleging discrimination on the basis of her age and race. Plaintiff was issued a Right-to-Sue notice and timely filed this action.

## CLAIMS FOR RELIEF

### COUNT I
### (Violation of Title VII of the Civil Rights Act of 1964)

60. The allegations of Paragraphs 1 through 59 of this Complaint are re-alleged and incorporated by reference.

61. The actions of NCDSS as set forth herein, constitute harassment and intentional discrimination against Plaintiff on the basis of her race, in violation of Title VII of the 1964 Civil Rights Act, 42 U.S.C. §2000e, *et seq*.

62. NCDSS engaged in discriminatory practices against Plaintiff with either malice or with

9

reckless indifference to the federally protected rights of Plaintiff to be free from racial discrimination in the workplace.

63. Specifically, Plaintiff was denied a promotion on the basis of her race as more fully described herein.

64. Plaintiff is entitled to all of her benefits of employment, including but not limited to, back pay, front pay, health insurance, life insurance, and retirement benefits.

65. Plaintiff is entitled to recover compensatory damages as provided by the 1964 Civil Rights Act, 42 U.S.C. §2000e, *et seq*. (Title VII) in an amount exceeding Twenty-Five Thousand Dollars ($25,000.00) as a proximate result of NCDSS's conduct alleged herein.

66. Plaintiff is further entitled to recover reasonable attorney's fees, the costs and the expenses of this action, and such interest as may be allowed by law.

## COUNT II
**(Violation of the Age Discrimination in Employment Act)**

67. The allegations contained in Paragraphs 1-66 are re-alleged and incorporated herein by reference.

68. The federal Age Discrimination in Employment Act, (ADEA) 29 U.S.C. §621 *et. seq.*, prohibits age discrimination in employment, and prohibits retaliation against employees for complaints alleging age discrimination in the terms and conditions of employment.

69. In subjecting Plaintiff to a difference in treatment by failing to promote Plaintiff, NCDSS violated the ADEA by discriminating against Plaintiff in whole or in part because of her age.

70. NCDSS's acts described herein constitute a violation of the Age Discrimination in Employment Act's prohibition against age discrimination.

71. Plaintiff has satisfied the jurisdictional prerequisites to an action under the ADEA by filing a charge of discrimination against NCDSS less than one hundred and eighty (180) days after

10

Case 5:21-cv-00163-M   Document 21   Filed 06/07/21   Page 10 of 15

the failure to promote Plaintiff and more than one hundred and eighty (180) days prior to initiating this action.

72. As a proximate result of NCDSS's wrongful conduct, Plaintiff has suffered lost wages and benefits, and other damages in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00).

## COUNT III
**(Adverse Employment Action in Violation of the North Carolina Whistleblower Act)**

73. The allegations contained in Paragraphs 1-72 of this Complaint are re-alleged and incorporated herein by reference.

74. Plaintiff was a state employee because she was employed by the Nash County Department of Social Services. The North Carolina Human Resources Act, including the whistleblower protection found in Article 14 thereof, applies to employees of local social services departments as stated in N.C. Gen. Stat. § 126-5(a)(2)(b).

75. Plaintiff partook in protected behavior under North Carolina law and made verbal and written complaints regarding the inappropriate behavior of Ms. Nicholson that was directed towards Plaintiff.

76. Plaintiff further partook in protected behavior under North Carolina by protesting actions that she was made to take by NCDSS including the violation of CPS protocols and best practices for the handling of sensitive child welfare cases.

77. The NCDSS took adverse employment action by not promoting Plaintiff to the Supervisor of Investigations and Assessments position because of this protected behavior.

78. A causal connection exists between the adverse employment action against Plaintiff and Plaintiff's protected behavior.

79. Any lawful explanation proffered by NCDSS is merely pretext for refusing to promote

Plaintiff to the Supervisor of Investigation and Assessments position.

80. As a result of NCDSS's refusal to promote Plaintiff because of Plaintiff's engagement in protected behavior, Plaintiff is entitled to damages in excess of Twenty-Five Thousand Dollars ($25,000.00).

## COUNT IV
### (Intentional Interference with Prospective Economic Advantage)

81. The allegations contained in Paragraphs 1-80 of this Complaint are re-alleged and incorporated herein by reference.

82. Plaintiff had a prospective business opportunity with Fairfax Department of Family Services. Plaintiff had been offered employment with Fairfax Department of Family Services that was contingent upon positive references. Plaintiff had a reasonable expectation that she would be able to secure this employment opportunity.

83. NCDSS's representative, Ms. Nicholson, was aware of the employment opportunity extended to Plaintiff by Fairfax Department of Family Services.

84. Upon information and belief, Ms. Nicholson wrongfully provided an unsolicited, negative reference of Plaintiff to the Fairfax Department of Family Services. The reference was also false and misleading.

85. Ms. Nicholson was not one of the three employees of NCDSS that was listed to provide a reference of Plaintiff to Fairfax Department of Family Services.

86. Plaintiff would have entered into an employment agreement with Fairfax Department of Family Services but for Ms. Nicholson's intentional interference.

87. Ms. Nicholson maliciously and willfully interfered with Plaintiff's prospective employment opportunity by inducing Fairfax Department of Family Services not to enter into the employment agreement with Plaintiff.

88. Ms. Nicholson's actions were without justification. Her actions were done willfully, maliciously, and with reckless disregard to Plaintiff's rights.

89. Ms. Nicholson's wrongful conduct constitutes tortious interference with prospective economic advantages.

90. As a result of Ms. Nicholson's wrongful conduct, Plaintiff suffered damages. Such damages include, but are not limited to, salary and benefits in excess of Twenty-Five Thousand Dollars ($25,000.00).

91. As a result of Ms. Nicholson's willful, malicious, and reckless conduct, Plaintiff is entitled to punitive damages.

## COUNT V
**(Intentional Interference with Contract)**

92. The allegations contained in Paragraphs 1-91 of this Complaint are re-alleged and incorporated herein by reference.

93. In addition and/or in alternative to Plaintiff's prospective economic opportunity, a valid oral and written contract existed between the Plaintiff and Fairfax Department of Family Services.

94. The Defendants had knowledge of the valid contract, those Defendants intentionally induced breach of the contract, the Defendants acted without justification or privilege, the Defendants acted out of self-interest, and the Defendants' conduct caused the Plaintiff actual damages.

95. The Defendants intentionally and without justification or privilege interfered with the contract between Plaintiff and Fairfax Department of Family Services with full knowledge of the existence of said contract, and Ms. Nicholson induced Fairfax Department of Family Services to breach its contract with Plaintiff by providing an unsolicited and false negative reference.

96. The acts of Ms. Nicholson were intentional, willful, wanton, malicious and wrongful and made in reckless disregard of Plaintiffs' rights.

97. As a result of Ms. Nicholson's wrongful conduct, Plaintiff suffered damages. Such damages include, but are not limited to, salary and benefits in excess of Twenty-Five Thousand Dollars ($25,000.00).

98. Further, as a result of Ms. Nicholson's willful, malicious, and reckless conduct, Plaintiff is entitled to punitive damages.

## PRAYER FOR RELIEF

**WHEREFORE,** the Plaintiff respectfully prays that:

1. As to Count I of this Complaint, Plaintiff have and recover of Defendant Nash County Department of Social Services, damages in an amount in excess of Twenty-Five Thousand ($25,000.00).

2. As to Count II of this Complaint, Plaintiff have and recover of Defendant Nash County Department of Social Services, damages in an amount in excess of Twenty-Five Thousand ($25,000.00).

3. As to Count III of this Complaint, Plaintiff have and recover of Defendant Nash County Department of Social Services, damages in an amount in excess of Twenty-Five Thousand ($25,000.00).

4. As to Count IV of this Complaint, Plaintiff have and recover of Defendants, damages in an amount in excess of Twenty-Five Thousand ($25,000.00).

5. As to Count V of this Complaint, Plaintiff have and recover of Defendants, damages in an amount in excess of Twenty-Five Thousand ($25,000.00).

6. As to all appropriate Counts of this Complaint, Plaintiff have and recover reasonable attorneys' fees from Defendants.

7. That the costs of this action be taxed against Defendants.

8. That this case have a **Trial By Jury** on all issues so triable.

9. For such other and further relief as to the Court may seem just and proper.

This the 28th day of May, 2021.

**Hill Law, PLLC**

**/s/ M. Brad Hill**
M. Brad Hill
N.C. Bar No.: 44457
PO Box 33096
Raleigh, NC 27101
P: 919-651-3739
F: 919-651-3746
mbh@bradhillesq.com
*Attorney for Plaintiff*