IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

Case No. 5:21-cv-00163-M

DIANE MILLER,                          )
                                       )
        Plaintiff,                     )
                                       )
v.                                     )          ORDER
                                       )
NASH COUNTY, and, KIMBERLY S.          )
NICHOLSON, in her individual and official )
capacity,                              )
                                       )
        Defendant.

---

This matter is before the court on Defendants' Motion to Dismiss Plaintiff's Complaint

pursuant to Fed. R. Civ. P. 12(b)(6). [DE 25]. Defendants contend the Complaint fails to plausibly

allege any claims for relief. Plaintiff argues that her allegations, taken as true, state plausible

claims of illegal discrimination, whistleblowing, and tortious interference. For the reasons stated

herein, Defendants' Motion to Dismiss is granted in part and denied in part.

## I.      Plaintiff's Factual Allegations

The following are factual allegations (as opposed to statements of bare legal conclusions,

unwarranted deductions of fact, or unreasonable inferences) made by the Plaintiff in the operative

First Amended Complaint (DE 21), which the court must accept as true at this stage of the

proceedings. *See, e.g., King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016).

A. Nash County Employs Miller.

Plaintiff Diane Miller is a Caucasian woman over the age of forty. First Amend. Compl.

¶ 8 ("Compl."). In September 2015, Miller began interning for Nash County. *Id.* ¶ 9. As an intern,

she advocated for vulnerable children. *Id.* During her internship, she was completing a Masters

of Social Work at East Carolina University. *Id.* Shea Neal, the Deputy Director of Nash County Department of Social Services, was Miller's direct supervisor. *Id.* ¶ 10. Director Amy Pridgen-Hamlett was Miller's internship supervisor. *Id.* On December 21, 2015, Nash County hired Miller to serve as an Investigations, Assessments, and Treatment Social Worker within the Child Protective Services Division. *Id.* ¶ 11. Amanda Jankowski became her direct supervisor while Director Pridgen-Hamlett remained her internship supervisor. *Id.* ¶ 12. Then, in February 2017, Miller applied for and received a lateral transfer to an on-call position. *Id.* ¶ 13. Neal again became Miller's direct supervisor. *Id.* From January 2016 to January 2018, Miller performed her job successfully and received no disciplinary action during this time. *Id.* ¶ 16.

In September 2017, Kimberly S. Nicholson was hired and became Miller's direct supervisor. *Id.* ¶ 14. Beginning in 2018, Nicholson began requiring Miller, unlike other employees, to cover on-call for other workers, cover the intake desk, assist other workers with their assigned tasks, and work on-call while attending scheduled trainings. *Id.* ¶¶ 18–19. Miller was unfairly scrutinized for the overtime she spent on these tasks. *Id.* ¶ 18. On or about February 1, 2018, Miller reported her concerns about Nicholson's perceived discriminatory behavior to Neal; but Miller believes Neal did not act on the complaint. *Id.* ¶ 20.

B. Nash County Denies Miller a Promotion to Social Work Supervisor.

On or about March 25, 2018, Miller applied for a Social Work Supervisor position. *Id.* ¶ 21. A team of supervisors, including Nicholson, Jankowski, and Neal, interviewed Miller. *Id.* ¶ 22. Miller scored a perfect 25 out of 25 points in the interview assessment. *Id.* ¶ 21.

Approximately one month later, Miller met with Neal to file a written complaint about what Miller perceived to be Nicholson's continued discriminatory behavior. *Id.* ¶ 23. Miller believes Neal again failed to act on the report. *Id.*

2

Ultimately, Miller was not offered the Supervisor Position. *Id.* ¶ 24. Despite Miller's educational background, successful work experience, and exceptional performance in the interview, Nash County reposted the Supervisor Position, and conducted a second round of interviews. *Id.* Nash County did not consider Miller during the second round of interviews. *Id.* ¶ 25. Instead, Nash County hired an African-American applicant under the age of 40. *Id.* Miller believes the hired applicant was less qualified than her. *Id.*

Miller was notified of the hiring decision in May 2018. *Id.* ¶ 26. Shortly thereafter, Miller met with the management team to discuss her interview and the selection. *Id.* The team informed Miller that another supervisor position would open soon and encouraged her to apply. *Id.* ¶ 27. The team told Miller she was a strong candidate for the position. *Id.*

### C. Miller Transfers to Another Working Team.

Miller decided to transfer to a different working team. She believed she would continue to experience what she perceived as discrimination and harassment working under Nicholson. *Id.* ¶ 28. On or about June 9, 2018, Miller was granted a lateral move to a new team. *Id.* ¶ 29. Caison became Miller's direct supervisor. *Id.* Nicholson remained the Program Director and direct supervisor for all "on-call" duties. *Id.*

Miller performed well on Caison's team. Miller did not receive any disciplinary action or reprimand, was tasked with assisting in the training of new employees, was asked to assist other employees on her team, and was given specific and challenging cases due to her experience and investigative skills. *Id.* ¶ 30. Miller's successful work product was reflected in her annual February 2019 performance review, which reports that she scored a 1.8 out of 2.0 and was assessed as "exceeds standards" in teamwork, public and customer relations, time management, and application of professional knowledge and skills. *Id.* ¶ 31. Caison conducted Miller's annual

performance review, and it was signed by Director Pridgen-Hamlett, Neal, and Nicholson. *Id.*
¶ 32.

While working under Caison, Nicholson continued to scrutinize Miller's work and time management. *Id.* ¶ 33. For example, Nicholson instructed Miller to interview, for a third time, two children who had disclosed sexual, emotional, and physical abuse to their therapist. *Id.* ¶ 34. Miller believes this action was contrary to Child Protective Services (CPS) protocol and best practices because repeated interviews can cause a child to be revictimized. *Id.* ¶ 35. Miller expressed concerns about performing this task and other tasks that violated CPS protocol and best practices. *Id.*

### D. Nash County Denies Miller an Interview for a Second Supervisor Position and She Resigns from Her Job.

On or about May 10, 2019, Miller again applied for an open Supervisor Position. *Id.* ¶ 36. Despite being assessed as more than qualified for the Supervisor Position and scoring 25 out of 25 on her previous interview, Nash County did not interview Miller. *Id.* ¶ 37. Instead, Nash County hired an African-American applicant under the age of 40. *Id.* ¶ 38. Miller believes the hired applicant was less qualified than her in that the applicant had not completed first-year training requirements, was not trained in sex abuse, forensic interviewing, application of professional knowledge and skill, and had failed an internship. *Id.* ¶ 39.

On or about June 24, 2019, Miller resigned from her job due to perceived continued harassment, bullying, and discrimination by Nicholson. *Id.* ¶ 40. Miller sought to leave in good standing and gave notice that her last day would be July 19, 2019. *Id.* ¶ 41. Director Pridgen-Hamlett accepted Miller's resignation in good standing. *Id.* ¶ 42.

On or about June 27, 2019, Miller spoke to Neal about her resignation. *Id.* ¶ 43. Miller informed Neal that she resigned because she felt harassed, discriminated against, and bullied by

4

Nicholson. *Id.* Neal responded that Miller "did not deserve an interview" because Miller had poor time management skills, boundary issues, and was unable to get along with community partners. *Id.* ¶ 44. Miller alleges these statements were inaccurate and directly contradicted her 2019 annual evaluation where she "exceed[ed] standards" in these areas. *Id.* ¶ 44.

Later that same day, Miller went to Nash County's Personnel Office and spoke with Anison Kirkland, the Personnel Director, to whom Miller reported her concerns about Nicholson. *Id.* ¶ 45. Again, no action was taken to address Miller's concerns about discriminatory treatment. *Id.*

On or about July 1, 2019, Miller was asked to speak with Director Pridgen-Hamlett in her office. Pridgen-Hamlett informed Miller this would be her last day at the agency. *Id.* ¶ 46. Miller was instructed to turn in her phone, badge, and computer. *Id.* She was then escorted from the building. *Id.* Miller believes that no employee granted a resignation in "good standing" was escorted from the premises in such manner. *Id.* ¶ 47.

### E. Miller obtains a job offer with Fairfax County Department of Family Services in Virginia, which is then rescinded when Nicholson contacts the Department.

Miller began searching and interviewing for jobs. In early August, she applied to work as a Social Service Specialist with the Fairfax County Department of Family Services in Virginia. *Id.* ¶¶ 48–49. Following an interview, Fairfax County communicated with Caison, who provided a positive reference for Miller. *Id.* ¶ 50. Miller believes two of her coworkers also provided favorable references. *Id.*

On or about August 14, 2019, Fairfax County extended a contingent job offer to Miller. *Id.* ¶ 51. Fairfax County had to verify her credentials, criminal background, driving record, and Child Protective Services registry checks. *Id.* Miller attended on-boarding orientation, was fingerprinted, and completed all elements required prior to employment. *Id.* ¶ 52. She was scheduled to start work on September 3, 2019. *Id.*

5

On or about August 23, 2019, Nicholson contacted the Fairfax County Department of Family Services and provided an unsatisfactory reference about Miller. *Id.* ¶ 53. Neither Miller nor Fairfax County requested a reference from Nicholson. *Id.* ¶ 54. Miller believes Nicholson heard about Miller's job offer from co-workers, then contacted Fairfax County to provide an unsolicited, false, negative reference. *Id.*

On or about August 26, 2019, Fairfax County rescinded Miller's employment offer due to Nicholson's unsatisfactory reference. *Id.* ¶ 55. Miller was unable to secure employment for more than a year due to Nicholson's reference. *Id.* Miller believes the negative reference was shared with other state and county agencies in Virginia. *Id.* ¶ 56. The negative reference prevented Miller from obtaining any social-service position within the state. *Id.*

Miller filed a timely charge of discrimination with the EEOC alleging discrimination because of her age and race. *Id.* ¶ 59. She was issued a Right-to-Sue notice and timely filed this action. *Id.* Miller sues Defendants Nash County[1] and Nicholson for race discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et. seq., ("Title VII"); age discrimination under the Age Discrimination in Employment Act, 29 U.S.C. § 621 et. seq., ("ADEA"); for violating North Carolina's Whistleblower Act; and for tortious interference with a contract or prospective economic advantage in violation of North Carolina law. The present motion followed.

---

[1] "The capacity of a governmental body to be sued in the federal courts is governed by the law of the state in which the district court is held." *Avery v. Burke Cty.*, 660 F.2d 111, 113–14 (4th Cir. 1981). "A North Carolina statute expressly provides that a county is a legal entity which may sue and be sued." *Id.* (citing N.C. Gen. Stat. § 153A-11). Thus, Nash County "may sue and be sued."

6

## II.    Legal Standards

When considering a Rule 12(b)(6) motion to dismiss, the court accepts as true all of the Complaint's well-pleaded factual allegations and draws all reasonable inferences in the plaintiff's favor, *Hall v. DIRECTV, LLC*, 846 F.3d 757, 765 (4th Cir. 2017), but any legal conclusions proffered by the plaintiff need not be accepted as true, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The *Iqbal* Court made clear that "Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678–79.

To survive a Rule 12(b)(6) motion, the plaintiff's well-pleaded factual allegations, accepted as true, must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). *Twombly's* plausibility standard requires that a plaintiff's well-pleaded factual allegations "be enough to raise a right to relief above the speculative level," i.e., allege "enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Id.* at 555–56. A speculative claim resting upon conclusory allegations without sufficient factual enhancement cannot survive a Rule 12(b)(6) challenge. *Iqbal*, 556 U.S. at 678–79 ("[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'") (quoting Fed. R. Civ. P. 8(a)(2)); *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) ("'[N]aked assertions' of wrongdoing necessitate some 'factual enhancement' within the

7

complaint to cross 'the line between possibility and plausibility of entitlement to relief.'" (quoting *Twombly*, 550 U.S. at 557)).

## III. Analysis

### A. Title VII Race Discrimination Claim.

#### i. *Twombly*'s Plausibility Standard Applied to a Title VII Claim.

Title VII makes it "an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Title VII must be interpreted "in accord with the ordinary public meaning of its terms at the time of its enactment." *Bostock v. Clayton Cty., Ga.*, 140 S. Ct. 1731, 1738 (2020). "From the ordinary public meaning of the statute's language at the time of the law's adoption, a straightforward rule emerges: An employer violates Title VII when it intentionally fires[, fails to hire, or otherwise discriminates against] an individual employee based in part on [race, color, religion, sex, or national origin]." *Id.* at 1741; *see also Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 153 (2000) ("The ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination.").

Historically, Title VII discrimination claims based on circumstantial evidence—i.e., but for unlawful discrimination the adverse employment action would not have occurred—have been analyzed under a "single-motive" or "but-for" theory of liability pursuant to *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this "*McDonnell Douglas*" framework, the plaintiff, after establishing a prima facie case of discrimination, demonstrates that the employer's proffered

permissible reason for taking an adverse employment action is actually a pretext for discrimination. *See Texas Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 252–53 (1981).

Importantly, "'an employment discrimination plaintiff need not plead a prima facie case of discrimination . . . to survive [a] motion to dismiss,' because '[t]he prima facie case . . . is an evidentiary standard, not a pleading requirement,' that may require demonstrating more elements than are otherwise required to state a claim for relief." *McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 584 (4th Cir. 2015) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510–15 (2002)).[2] Therefore, "the ordinary rules for assessing the sufficiency of a complaint [including Federal Rule of Civil Procedure 8(a)(2)] apply." *Id.* at 585.

However, "[w]hile a plaintiff is not required to plead facts that constitute a prima facie case in order to survive a motion to dismiss, '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Id.* (quoting *Coleman v. Md. Ct. App.*, 626 F.3d 187, 190 (4th Cir. 2010)) (internal citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. In *McCleary-Evans*, the court, without engaging in a *McDonnell Douglas* analysis, found the plaintiff failed to state a plausible claim that her employer failed or refused to hire her because of her race and sex concluding:

> While the allegation that non-Black decisionmakers hired non-Black applicants instead of the plaintiff is consistent with discrimination, it does not alone support a reasonable inference that the decisionmakers were motivated by bias. McCleary–Evans can only speculate that the persons hired were not better qualified, or did not perform better during their interviews, or were not better suited based on experience and personality for the positions. In short, McCleary–Evans' complaint "stop[ped] short of the line between possibility and plausibility of entitlement to relief."

---

[2] Under prevailing law, a court may find that a plaintiff who *succeeds* in alleging facts sufficient to support the elements of a *McDonnell Douglas* prima facie case states a plausible claim for Title VII discrimination; however, a court may not grant a Rule 12(b)(6) motion based on the Plaintiff's *failure* to plead each and every *McDonnell Douglas* element. *See id.*

9

780 F.3d at 586 (citations omitted).  In a later opinion also affirming a Rule 12(b)(6) dismissal without engaging in a *McDonnell Douglas* analysis, the Fourth Circuit noted, "[t]he mere fact that a certain action is potentially consistent with discrimination does not alone support a reasonable inference that the action was motivated by bias." *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020), *cert. denied*, 141 S. Ct. 1376 (2021).   In essence, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Moreover, where the pleading makes "obvious" the employer's stated non-discriminatory reason for the adverse employment action, the Fourth Circuit has found:

> McCleary–Evans' complaint leaves open to speculation the cause for the defendant's decision to select someone other than her, and the cause that she asks us to infer (i.e., invidious discrimination) is not plausible in light of the "'obvious alternative explanation'" that the decisionmakers simply judged those hired to be more qualified and better suited for the positions. Indeed, the consequence of allowing McCleary–Evans' claim to proceed on her complaint as stated would be that any qualified member of a protected class who alleges nothing more than that she was denied a position or promotion in favor of someone outside her protected class would be able to survive a Rule 12(b)(6) motion. Such a result cannot be squared with the Supreme Court's command that a complaint must allege "more than a sheer possibility that a defendant has acted unlawfully."

*McCleary-Evans*, 780 F.3d at 588 (citation omitted); *see also Bing*, 959 F.3d at 617–18 (where plaintiff "specifically alleged a non-racial reason for the termination"—i.e., his involvement in a firearm "shooting event disqualified him from continuing to work at Brivo"—the court found the factual allegations supporting his claim insufficient noting, "we would have to 'speculate' to 'fill in the gaps' as to [the employer's] motivation for the [adverse action] and to disregard the reason given to Bing for his termination.") (citations omitted).

<u>ii. Application of *Twombly*'s Standard to Miller's Title VII Claim.</u>

Applying these legal principles, the court finds Plaintiff's factual allegations sufficient to state a claim for Title VII discrimination under *McDonnell Douglas*.

Miller alleges Nash County failed to promote her because of her race. The elements of a cause of action created by Title VII are that (1) Nash County took an adverse employment action against Miller, (2) because of Miller's race. 42 U.S.C. § 2000e-2(a)(1); *see also McCleary-Evans*, 780 F.3d at 585. Miller argues her allegations satisfy the elements of a Title VII cause of action through the prism of the *McDonnell Douglas* prima facie case.

*McDonnell Douglas* establishes a four-factor prima facie case. A plaintiff must establish "that: (1) she is a member of a protected class; (2) she 'suffered an adverse employment action'; (3) her job performance was satisfactory; and (4) the adverse employment action occurred 'under circumstances giving rise to an inference of unlawful discrimination.'" *Swaso v. Onslow Cty. Bd. of Educ.*, 698 F. App'x 745, 747 (4th Cir. 2017) (quoting *Adams v. Tr. Of Univ. of N.C.-Wilmington*, 640 F.3d 550, 558 (4th Cir. 2011)). "The fourth element is met if 'similarly-situated employees outside the protected class received more favorable treatment.'" *Id.* (citing *White v. BFI Waste Servs., LLC*, 375 F.3d 288, 295 (4ᵗʰ Cir. 2004)). "While a plaintiff need not plead a prima facie case to survive a motion to dismiss, a Title VII complaint is still subject to dismissal if it does not meet the ordinary pleadings standard under *Twombly* and *Iqbal*." *Id.* (citing *McCleary-Evans*, 780 F.3d at 584–85).

Miller states a claim by satisfying these factors. First, she is a Caucasian woman. Compl. ¶ 8. Second, she applied for the position in question—Social Work Supervisor—but was not hired.

11

*Id.* ¶¶ 36–37.[3]  Third, Miller was qualified for the position and meeting her employer's expectations.  She received a favorable performance review shortly before applying for the position. *Id.* ¶ 31.  The performance review noted that Miller's performance "exceeds standards." *Id.* ¶ 31.  She attained a perfect score on her interview for the previous position. *Id.* ¶¶ 21, 37.  Her management team informed her that she was a strong candidate for the position. *Id.* ¶ 27.  Fourth, a less qualified applicant outside of Miller's protected class was hired. *Id.* ¶¶ 38–39.  The hired applicant lacked basic skills for the position.  Specifically, the hired applicant failed to complete first-year training requirements, lacked training in sex abuse and forensic interviewing, and failed a previous internship. *Id.* ¶ 39.

Nash County counters that Miller has failed to state a claim because there is an explanation for its failure to promote Miller on the face of the Complaint.[4]  After Miller resigned, her direct supervisor, Neal, told Miller she "did not deserve an interview" because Miller had poor time management skills, boundary issues, and was unable to get along with community partners. *Id.* ¶ 44.  Nash County argues "[w]ithout any direct or circumstantial evidence to the contrary, the logical explanation for Plaintiff not being selected is . . . simply that one or more of her supervisors did not hold a high opinion of Plaintiff's abilities." [DE 26 at 13].  Nash County also argues that the Complaint lacks allegations about "the make-up of the other applicant." *Id.*

Nash County's argument fails at this stage because Miller has alleged that this explanation is a pretext. *See* Compl. ¶ 44.  First, she alleges the hired applicant's "make up" was African

---

[3] Although Miller was twice denied a promotion, the subject of this lawsuit is only the failure to promote on her second application for the Social Work Supervisor position. [DE 27 at 9, n.1]. She relies on the facts surrounding her first application as context to support her claims.

[4] Nash County argues Miller has failed to plead any harassment under Title VII or the ADEA. [DE 26 at 11].  However, Miller has not alleged a harassment claim.  She brings only a failure-to-promote claim under Title VII and the ADEA.

American and less qualified. *Id.* ¶ 38. The hired applicant was less qualified because the applicant failed to complete first-year training requirements, lacked training in sex abuse and forensic interviewing, and failed a previous internship. *Id.* ¶ 39. This is the kind of factual enhancement the court in *McCleary-Evans* stated was sufficient to state a claim. *Cf.* 780 F.3d at 586 (finding "this last detail" that the plaintiff "alleged specifically that the new chief underwriting officer was 'less experienced and less qualified' for the position because he 'had only one year of underwriting experience at the time he was promoted'" was "precisely the kind of allegation that is missing from McCleary-Evans' complaint." (quoting *Swierkiewicz*, 534 U.S. at 508)). Next, Miller alleges Neal's statement is "inaccurate and a direct contradiction to Plaintiff's 2019 annual evaluation where Plaintiff was assessed as 'exceeds standards' in these areas." Compl. ¶¶ 40–44. Neal stated that Miller had poor time management skills, boundary issues, and was unable to get along with community partners, but this directly contradicts Miller's annual performance review which stated she "exceeds standards" in time management, teamwork, public and customer relations, and application of professional knowledge and skills. *Compare id.* ¶ 44 *with id.* ¶ 31. Moreover, Neal's statement was made only after Miller had resigned while complaining about her supervisor's discrimination and harassment. The Fourth Circuit's decision in *Woods v. Greensboro* instructs district courts to dismiss a complaint based on an alternative explanation only if it the explanation is "so obviously an irrefutably sound and unambiguously nondiscriminatory and non-pretextual explanation that it renders [plaintiff's] claim of pretext implausible." 855 F.3d 639, 649 (4th Cir. 2017). Miller's claim of pretext is not implausible. Because Miller has alleged a less-qualified comparator, concrete evidence of satisfactory job performance, and that her employer's alternative explanation articulated only after her resignation

is contradicted by the evidence of her good job performance, Miller has stated a claim under *McDonnell Douglas* that Nash County's proffered explanation is a pretext.

Nash County's motion to dismiss Miller's Title VII claim is denied. This court notes the *McDonnell Douglas* prima facie case often manufactures an artificial inference of illegal discrimination contrary to ordinary principles of evidence, thus permitting an overbroad range of cases to proceed to discovery. Sandra F. Sperino, *Flying Without a Statutory Basis: Why McDonnell Douglas is Not Justified By Any Statutory Construction Methodology*, 43 Hous. L. Rev. 743, 747 (2006) (arguing *McDonnell Douglas* is inconsistent with any method of statutory interpretation and creates " a test that is both underinclusive and overinclusive, requiring plaintiffs to prove facts that are unnecessary to establish discrimination and robbing defendants of some of their prerogatives under the common law to make employment decisions."); *see also id.* at 771 ("While many of the problems with the prima facie case disadvantage plaintiffs, they can also disadvantage defendants by raising an inference of discrimination, where none should exist.").

Nevertheless, this court is bound by *McDonnell Douglas's* strictures, and Miller has stated a prima facie case under it, satisfying the elements of a Title VII cause of action at this stage. Moreover, under binding Fourth Circuit caselaw, Miller's allegations suggest Nash County's alleged alternative explanation for its adverse employment action could be a pretext for discrimination. Therefore, Miller has stated a claim of Title VII race discrimination under *McDonnell Douglas* and this court must deny Nash County's motion to dismiss.

B. Age Discrimination.

Miller alleges Nash County failed to promote her because of her age. The ADEA makes it "unlawful for an employer to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to [her] compensation, terms, conditions, or

14

privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). To succeed on an ADEA claim, the plaintiff "must prove, by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision." *Bodkin v. Town of Strasburg, Va.*, 386 F. App'x 411, 413 (4th Cir. 2010) (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177–78 (2009)).

At the 12(b)(6) stage, however, Miller's age discrimination claim is governed by *Twombly*'s plausibility standard. Thus, she must allege facts that plausibly state the "elements of a[n] [ADEA] cause of action." *Tickles v. Johnson*, 805 F. App'x 204, 207 (4th Cir. 2020) (quoting *McCleary-Evans*, 780 F.3d at 585). The elements of an ADEA cause of action are "the plaintiff is (1) over the age of 40, and (2) experienced discrimination by an employer (3) because of [her] age." *Id.* at 207 (quoting *Laber v. Harvey*, 438 F.3d 404, 430 (4th Cir. 2006)). Miller alleges she is over the age of 40 and Nash County discriminated against her, i.e. failed to promote her, while someone younger and less qualified was promoted. Compl. ¶¶ 8, 38–39.

The court cannot plausibly infer from Miller's allegations that Nash County discriminated against her because of her age. The only factual enhancement she provides to support her claim is irrelevant similarly situated comparator allegations. Under the ADEA, a similarly situated comparator must be "substantially younger" than the plaintiff. *Dugan v. Albemarle Cty. Sch. Bd.*, 293 F.3d 716, 721 (4th Cir. 2002). The ADEA "does not ban discrimination against employees because they are aged 40 or older; it bans discrimination against employees because of their age, but limits the protected class to those who are 40 or older." *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 312 (1996). The Supreme Court has held that there is no probative value in "the fact that an ADEA plaintiff was replaced by someone outside the protected class." *Id.*; *see also id.* ("The fact that one person in the protected class has lost out to another person in the

protected class is thus irrelevant, so long as [s]he has lost out *because of [her] age*."). Although Miller is not required to plead a prima facie case at the 12(b)(6) stage, her allegations must be "adequate to create an inference that an employment decision was based on a[n] [illegal] discriminatory criterion. . . ." *Id.* at 312–313 (quoting *Teamsters v. United States*, 431 U.S. 324, 358 (1977)) (emphasis omitted). "In the age-discrimination context, such an inference cannot be drawn from the replacement of one worker with another worker insignificantly younger." *Id.* at 313. Miller has alleged only that she "was replaced by someone outside the protected class." *Id.* She does not allege her age nor her comparator's age. This court cannot draw an inference of age discrimination from the mere *possibility* that Miller's comparator is substantially younger than her. Without more, Miller has failed to state a plausible claim of age discrimination and her claim must be dismissed.

However, the court dismisses the claim without prejudice. If Miller's alleged comparator is "substantially younger" than her, she may amend her complaint to include those allegations.

C. North Carolina Whistleblower Act.

Miller claims the Defendants violated North Carolina's Whistleblower Act, which protects State employees who report evidence of illegal activity by a State agency or State employee. N.C. Gen. Stat. § 126-84(a).[5] To state a claim, a plaintiff must allege "the following three essential

---

[5] Nash County argues Miller is not protected by the Whistleblower Act because she is not a state employee. The County correctly states that the Act only applies to state employees and that if a plaintiff claims retaliation based on actions that happen while the plaintiff is not a state employee, the plaintiff does not receive the Act's protection. [DE 26 at 15]; *see also Hodge v. North Carolina Dept. of Transp.*, 175 N.C. App. 110, 118 (2005). However, Miller's alleged protected activities and adverse actions occurred while she was employed by the County. North Carolina courts have repeatedly held that employees of county departments of social services are protected by the Whistleblower Act. *Early v. Cty. Of Durham Dep't of Soc. Servs.*, 172 N.C. App. 344, 351 (2005) (finding an employee of Durham County Department of Social Services protected by the provisions of Chapter 126); *see also Watlington v. Dep't of Soc. Servs. Rockingham Cty.*, 252 N.C. App. 512, 520 (2017), *overruled on other grounds by Rouse v. Forsyth Cty. Dep't of Soc. Servs.*,

elements: (1) that the plaintiff engaged in a protected activity, (2) that the defendant took adverse action against the plaintiff in his or her employment, and (3) that there is a causal connection between the protected activity and the adverse action taken against the plaintiff." *Newberne v. Dep't of Crime Control & Pub. Safety*, 359 N.C. 782, 788, 618 S.E.2d 201, 206 (2005) (the prima facie case). The Whistleblower Act defines protected activity to include a state employee "report[ing] verbally or in writing" to the "appropriate authority, evidence of activity by a State agency or State employee constituting . . . [a] violation of State or federal law, rule or regulation." N.C. Gen. Stat. § 126-84(a)(1). The statute defines "adverse employment action" as "any State department, agency or institution or other State employee exercising supervisory authority . . . discharge[ing], threaten[ing] or otherwise discriminat[ing] against a State employee regarding the State employee's compensation, terms, conditions, location, or privileges of employment." *Id.* at § 126-85(a). The Act also forbids an employer from taking adverse employment action against an employee "because the State employee, or a person acting on behalf of the employee, reports or is about to report, verbally or in writing, [a violation of State or federal law, rule or regulation,] unless the State employee knows or has reason to believe that the report is inaccurate." *Id.* at § 126-85(a).

There are three methods of proving the required causal connection for a claim under the Whistleblower Act: direct evidence, circumstantial evidence/"pretext", and mixed motive. *Newberne,* 359 N.C. at 790–95, 618 S.E.2d at 207–10. Miller proceeds under a pretext theory. She "seek[s] to establish by circumstantial evidence that the adverse employment action was

---

373 N.C. 400 (2020) ("The [North Carolina Human Resources Act] applies to all non-exempt State employees and certain local government employees, including those who work for local social services departments."). The Act protects Miller. On this score, Nash County's argument fails.

retaliatory and that the employer's proffered explanation for the action was pretextual." *Id.* at 790–91, 618 S.E.2d at 207.[6]

Miller fails to plausibly allege that she engaged in protected activity. She alleges that on two occasions she complained to the Deputy Director of Nash County Department of Social Services about Nicholson's "discriminatory behavior," Compl. ¶¶ 20, 23, but she must allege that she reported a violation of state or federal law. N.C. Gen. Stat. § 126-84(a)(1). Discriminatory behavior is not unlawful unless it is discrimination "because of" a legally protected trait, such as race or age. *See, e.g., Bonds v. Leavitt*, 629 F.3d 369, 384 (4th Cir. 2011) ("Title VII is not a general bad acts statute, however, and it does not prohibit private employers from retaliating against an employee based on her opposition to discriminatory practices that are outside the scope of Title VII." (citing *Crowley v. Prince George's Cnty., Md.*, 890 F.2d 683, 687 (4th Cir. 1989)). Miller knows what complaints she made to the deputy director. Under *Twombly*, this court will not speculate that Miller complained about unlawful discrimination. *Bonds*, 629 F.3d at 384; *Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."). Miller must allege that she reported a violation of state or federal law by complaining about discrimination on the basis of a protected characteristic under Title VII.

Miller's claim under North Carolina's Whistleblower Act is dismissed without prejudice. If Miller did in fact report discrimination that violates state or federal law, she may amend her complaint to include those allegations.

---

[6] Miller lacks any direct evidence of discrimination. Therefore, she must proceed under the pretext model for proving causation. *Wells v. N. Carolina Dep't of Corr.*, 152 N.C. App. 307, 315, 567 S.E.2d 803, 810 (2002) ("Our Court determined that the mixed-motive/pretext distinction applied, but concluded that because the plaintiff had presented no direct evidence of discrimination, the case was properly categorized as a pretext model case.").

<u>D. Intentional Interference with a Contract or Prospective Economic Advantage.</u>

Miller claims the Defendants tortiously interfered with her contract or prospective economic advantage. The elements of a claim for tortious interference with contract are

> (1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to plaintiff.

*Beverage Sys. of the Carolinas, LLC v. Associated Beverage Repair, LLC*, 368 N.C. 693, 700, 784 S.E.2d 457, 462 (2016) (quoting *United Labs., Inc. v. Kuykendall*, 322 N.C. 643, 661, 370 S.E.2d 375, 387 (1988)). Tortious interference with a prospective economic advantage "arises when a party interferes with a business relationship 'by maliciously inducing a person not to enter into a contract with a third person, which he would have entered into but for the interference, . . . if damage proximately ensues, when this interference is done not in the legitimate exercise of the interfering person's rights.'" *Id.* at 701, 784 S.E.2d at 462 (quoting *Spartan Equip. Co. v. Air Placement Equip. Co.*, 263 N.C. 549, 559, 140 S.E.2d 3, 11 (1965)). "The only difference in these elements for a tortious interference with prospective economic advantage claim is that instead of an existing contract, there must be a contract that would have been entered into but for the defendant's conduct." *Spirax Sarco, Inc. v. SSI Eng'g, Inc.*, 122 F. Supp. 3d 408, 431 (E.D.N.C. 2015).

"In order to demonstrate the element of acting without justification, the action must indicate 'no motive for interference other than malice.'" *Area Landscaping, LLC v. Glaxo-Wellcome, Inc.*, 160 N.C. App. 520, 523, 586 S.E.2d 507, 510 (2003); *see also Bloch v. The Paul Revere Life Ins. Co.*, 143 N.C. App. 228, 239, 547 S.E.2d 51, 59 (2001) ("Bad motive is the essence of a claim for tortious interference with contract."). Legal malice is "the intentional doing of the

19

harmful act without legal justification." *Childress v. Abeles,* 240 N.C. 667, 675, 84 S.E.2d 176, 182 (1954). General allegations of malice are insufficient. *See Button v. Level Four Orthotics & Prosthetics, Inc.*, 2022-NCSC-19, ¶ 34, 2022 WL 729477 (2022). The complaint must provide "a factual basis to support the claim of malice." *Pinewood Homes, Inc. v. Harris,* 184 N.C. App. 597, 605, 646 S.E.2d 826, 833 (2007) ("Thus, we must determine whether plaintiffs' [sic] have alleged a factual basis to support the claim of malice."); *see also id.* at 605, 646 S.E.2d at 833 ("Accordingly, we have held that the complaint must admit of no motive for interference other than malice.").

Miller's allegations merely speculate that Nicholson's alleged interference was without justification and with malice. Miller baldly alleges Nicholson provided Miller's prospective employer, Fairfax County, with a "false negative reference." Compl. ¶ 54. Miller does not allege what Nicholson said. Miller makes no factual allegations to support the assertion that Nicholson's reference was false. "As such, the allegations are conclusory and not entitled to be assumed true." *Iqbal*, 556 U.S. at 681. Even in the light most favorable to Miller, she does not allege any facts from which this court can do anything other than speculate about the reference's falsity. *Twombly*, 550 U.S. at 555. For example, if Nicholson merely expressed her "subjective view regarding plaintiff's abilities," that would "not express the malicious motive required by these torts." *Beck v. City of Durham*, 154 N.C. App. 221, 232, 573 S.E.2d 183, 191 (2002); *see also id.* ("With respect to both claims in plaintiff's complaint, he alleged that Ewell's comment to one of plaintiff's clients that she 'could do better' than hiring plaintiff induced that client to terminate her contract with plaintiff. However, this allegation simply expresses Ewell's subjective view regarding plaintiff's abilities and does not express the malicious motive required by these torts."). Miller must allege some "factual enhancement" to cross "the line between possibility and plausibility of

'entitle[ment] to relief.'" *Twombly*, 550 U.S. at 557. She has not done so here. Her general allegations of malice rest on mere speculation and are insufficient. *See Button*, 2022-NCSC-19, ¶ 34, 2022 WL 729477.

Miller's tortious interference claims are dismissed without prejudice. If Miller can allege facts to support her allegation that Nicholson's reference was indeed false, negative, and ultimately made with malice, she may amend her complaint to include those allegations.

## IV.    Conclusion

Plaintiff has stated a plausible claim of race discrimination under Title VII, as set forth in Count I of Plaintiff's Amended Complaint. Defendants' motion is DENIED as to Count I. Plaintiff has failed to state plausible claims under the ADEA (Count II), North Carolina Whistleblower Act (Count III), and North Carolina common law for tortious interference with contract and economic advantage (Counts IV and V). Defendants' motion is GRANTED as to counts II, III, IV, and V, and these claims are dismissed without prejudice. The stay of discovery imposed by Magistrate Judge Jones on June 10, 2021 is LIFTED and the parties shall proceed in accordance with Judge Jones's order.

SO ORDERED this __31st__ day of March, 2022.

*Richard E Myers II*
RICHARD E. MYERS II
CHIEF UNITED STATES DISTRICT JUDGE